[L. A. No. 3206.    Department Two.—January 28, 1914.]

ALTA PLANING MILL COMPANY (a Corporation), Respondent, v. WILLIAM GARLAND, Defendant and Appellant; MERCANTILE IMPROVEMENT ASSOCIATION, Defendant and Respondent.

BUILDING CONTRACT—INTERPRETATION—DUTY OF CONTRACTOR TO PROTECT ADJOINING STRUCTURES DURING EXCAVATIONS.—A provision in a building contract that "the contractor shall do all that is necessary to protect the adjoining buildings, streets and the public during the excavation, doing all shoring," bracing, and trenching required to that end, does not place upon the contractor the duty of going upon adjacent property and putting supports beneath the foundations of buildings thereon, nor impose upon him any greater liability than that imposed on the owner by section 832 of the Civil Code, which does not require support for buildings which have been superimposed upon the land adjacent to that upon which an excavation is to be made.

ID.—UNDERPINNING ADJACENT PROPERTY—LIABILITY OF CONTRACTOR FOR COST.—Under a clause in a building contract requiring the con-

tractor to assume all responsibility for damages which may occur to the building or to any adjoining building by any act or omission of himself or his employees, he is not liable for the cost of underpinning the walls of a building on adjoining property. Nor is he made liable for the. cost of such work by a clause in the contract requiring him to furnish any necessary thing which may have been omitted from the specifications, nor by a clause whereby he is to furnish all requisite materials for the contract price.

ID.—MEANING OF TERMS IN BUILDING CONTRACT—EXPERT TESTIMONY.— In a controversy between the contractor and the owner of the building as to which is liable under the contract for the cost of underpinning a building on adjacent property, an expert witness may testify that under the custom prevailing in the city the terms "shoring, bracing and trenching" have no reference to underpinning.

ID.—COST OF UNDERPINNING—IMPLIED PROMISE TO PAY.—If the authorized agent of the owner of the building ordered the contractor, while constructing the building, to underpin the walls of the building on adjacent property, an implied promise to pay the reasonable value thereof arises.

ID.—DISPUTES AS TO SPECIFICATIONS—SETTLEMENT BY ARCHITECTS.— A provision in a building contract that all disputes as to the meaning of the specifications shall be settled by the architects, has no application to a dispute as to extra work on adjacent property, which work is entirely outside the contract.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, and W. R. Millar, for Appellant.

W. G. Van Pelt, and Valentine & Newby, for Respondent.

MELVIN, J.—The defendant Garland appeals from a judgment against him and from an order denying his motion for a new trial.

Appellant had entered into a contract with the Alta Planing Mill Company whereby that corporation for an agreed consideration was to construct a building on Broadway in the city of Los Angeles. The land of appellant adjoined that of the Mercantile Improvement Association (a corporation), upon which there was a building. The building which had

been planned for Mr. Garland was to be one hundred and sixty feet in the dimension nearest the property of the Improvement Company but only thirty-six feet of its wall was to be in close proximity to the wall of the structure on that land.   On January 29, 1910, Messrs. Morgan & Walls, architects in charge of the work on the Garland building, wrote a letter to J. Wesley Roberts, secretary of the Improvement Company, informing him of the plan for the construction of the building on the adjacent property and notifying him to protect the wall of the building belonging to that corporation.   Later, Mr. Garland called upon Mr. Burnett, who was his attorney at law, and requested that gentleman to draw a form of legal notice to serve upon Mr. Roberts calling attention to his duty to protect the wall of his corporation's building.   As Mr. Burnett was attorney for both parties he declined to act in this matter but sent for Mr. Roberts who came to Mr. Burnett's office and held a conference with Mr. Garland.   There is a conflict in the testimony regarding this conversation.   Appellant says that Mr. Roberts told him to have his contractor do the work and to send the bill when it was completed and he (Roberts) would pay it.   Accordingly, appellant told Morgan & Walls, the architects, about this agreement and asked them to notify the contractors.   Mr. Roberts admitted that he authorized appellant to do certain work but denied that his authorization referred to the entire wall.   He testified that he said to appellant, "if this is necessary to underpin that 36 feet you go ahead and do it and we will stand our share of it."   On February 16, 1910, Morgan & Walls wrote a letter instructing the Alta Planing Mill Company to "underpin" thirty-six feet of the Mercantile Company's building, and on March 8th that firm wrote another letter to the same corporation containing this sentence: "The banks are so rotten on the south that as a matter of safety you will underpin the entire north wall of the Mercantile place building."   Meanwhile a letter had been written by Mr. Roberts in his official capacity to the appellant.   It bore date March 2, 1910, and omitting formal matters was as follows: "We are advised that the walls in Mercantile place behind your new buildings, are slipping down.   Will you kindly attend to this matter at once, and oblige? This as per

our conversation with you a few days ago relative to this matter.'' The plaintiff corporation proceeded to do the work as directed by the architects and in due time presented a bill against Mr. Garland to one of the members of the firm of Morgan & Walls, who told the president of the Mill Company that he had rendered the account to the wrong man and told him to seek payment from Mr. Roberts. This was the first intimation which the Alta Planing Mill Company received of the interest of the Mercantile Improvement Company in the matter of underpinning the walls. Mr. Roberts refused to pay the amount demanded or any sum, and suit was brought against Mr. Garland and the Mercantile Improvement Company, but after the taking of testimony in the case the action was dismissed as against the latter defendant and the court gave judgment against the former.

Appellant's first contention is that the work for which the suit was brought was a part of that which plaintiff was required to do under his contract. The contract contains among its specifications the following: ''The contractor shall do all that is necessary to protect the adjoining buildings, streets and the public during the excavation, doing all shoring, and bracing, and trenching required to this end.'' This did not place upon the contractor the duty of going upon the adjacent property and putting supports beneath the foundations of the building thereon. It was not so understood by any of the parties thereto nor by the neighbor. Mr. Garland's notice and demand upon the Mercantile Company (through the agency of his architects) and the admission by that company's authorized representative of at least some liability for making the wall safe, indicates that fact. The contract imposed no greater obligation upon the Alta Company than would have rested upon appellant if he had been making the excavation without the aid of the contractor. The quoted language of the contract imposes no greater liability than that which is the owner's under section 832 of the Civil Code. That section as interpreted by the decisions of this court does not require support for buildings which have been superimposed upon the land adjacent to that upon which an excavation is to be made. (*Aston* v. *Nolan,* 63 Cal. 271; *Conboy* v. *Dickinson,* 92 Cal. 604, [28 Pac. 809]; *Sullivan* v. *Zeiner,*

98 Cal. 349, [20 L. R. A. 730, 30 Pac. 209]; *Nippert* v. *Warneke,* 128 Cal. 503, [61 Pac. 96, 270].)

Nor was the contractor liable under a clause requiring him to assume all responsibility for damages which might occur to the building or to any adjoining building by any act or omission of himself or his employees. It is the usual paragraph in such agreements protecting the owner from the results of carelessness in the prosecution of the work.

Appellant was not protected by that part of the building contract requiring the contractor to furnish any necessary thing which might have been omitted from the specifications, nor by that by which the contractor was to furnish all requisite materials for the contract price. These obviously did not include work done on another man's property which was not a part of the scheme of construction.

A further contention is made that by an ordinance of the city of Los Angeles which was duly made a part of the contract of construction, the work done on the adjoining property was within the scope of the contractor's duties and obligations. By one section of that ordinance every person excavating for the purpose of laying the foundations of a building "shall support and protect from damage all adjoining land, buildings, streets, alleys and sidewalks by underpinning, cribbing or shoring or such other device as will prevent all settling, cracking or damage whatever." At the trial the court permitted an expert witness to testify with reference to the meaning of this part of the contract. He said that under the well defined custom and usage in the city of Los Angeles, the terms "shoring, bracing and trenching" had no reference to underpinning. Such testimony was entirely proper. (Civ. Code, sec. 1646; *Burns* v. *Sennett,* 99 Cal. 370, [33 Pac. 916]; *Law* v. *Northern Assurance Co.,* 165 Cal. 394, [132 Pac. 596].) It was clearly not within the contemplation of the parties to the contract nor the architects that the Alta Planing Mill Company should make *permanent* improvements upon the property adjoining that upon which the work of excavating and building was to be executed, nor was that the meaning reasonably to be derived from the ordinance.

The work for which this suit was instituted having been ordered by the authorized agent of the appellant, there arose

an implied promise to pay the reasonable value thereof. (*Brown* v. *Crown Gold Milling Co.*, 150 Cal. 382, [89 Pac. 86].)

Appellant's counsel lay great stress upon the argument that there was no consideration for the extra work because the plaintiff was bound by the terms of his contract to protect the building; but that was exactly what he was not bound to do, as the foregoing discussion has indicated. As was said by the learned judge of the trial court: "Here is a clear case of a contract made by an agent for an undisclosed principal, in which case the party entering into the contract with the agent can at his option either sue the agent or the principal." This conclusion is amply supported by authority. (*Bradford* v. *Woodworth*, 108 Cal. 686, [41 Pac. 797]; *Kerry* v. *Pacific Marine Co.*, 121 Cal. 570, [66 Am. St. Rep. 65, 54 Pac. 89]; 31 Cyc. 1555.)

The building contract between plaintiff and appellant provided, as such contracts generally do, that all disputes as to the meaning of the specifications should be settled by the architects, and appellant insists that this claim for extra work was subject to that rule. The obvious answer to that point is that this was a demand for extra work entirely outside of the contract for excavation and construction of the building on the Garland property.

The findings and judgment were correct in awarding to the Alta Planing Mill Company the reasonable value of the entire work. Appellant said he was authorized by Mr. Roberts to have his contractor do the work. The letter of Roberts, acting for the Mercantile Improvement Company, referred to the slipping of "the wall"—not merely the thirty-six feet nearest to the excavation—and the architects, the recognized agents of appellant, ordered plaintiff to "underpin the *entire north wall.*" According to his own testimony Mr. Garland was fully authorized to have the wall underpinned and to send the bill to Mr. Roberts for the corporation which the latter represented. There can be no doubt that Mr. Garland considered himself authorized to have the whole wall permanently underpinned, and the learned judge of the trial court gave full credit to his testimony in that regard as he stated in his written opinion.

It was admitted at the trial that the work performed was of the value alleged in the complaint, i. e., $2,274.77.

The judgment and order are affirmed.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.