[Civ. No. 23740. First Dist., Div. One. Jan. 24, 1968.]

EDWARD S. CONOLLEY et al., Plaintiffs and Respondents, v. HARRY MAX BULL, Defendant and Appellant.

---

*Assigned by the Chairman of the Judicial Council.

Cowan & Stone, Cowen, Henze, Morken & Stone and Douglas G. Cowan for Defendant and Appellant.

Dodge, Reyes, Brorby, Kahn & Driscoll and Julius Kahn III for Plaintiffs and Respondents.

MOLINARI, P. J.—Defendant appeals from a judgment entered after a trial by the court awarding plaintiffs $9,925.46 plus costs[1] in an action for rescission of a land sale contract, praying for damages in the alternative. The award of damages was predicated upon the theories of negligence and strict liability. We have concluded that the judgment is supportable on the former but not on the latter theory.

Defendant makes the following contentions: (1) That witnesses called by plaintiffs were not qualified to testify as expert witnesses; (2) that the court should not have permitted the complaint to be amended to conform to proof in September 1965, more than three years after the occurrence of the damage to plaintiffs' property in 1962, and hence beyond the applicable period of limitations for an action for injury to real property (Code Civ. Proc., § 338, subd. 2); (3) that his motion under Code of Civil Procedure section 631.8 should have been granted because the trial court made findings that indicated insufficient evidence to support the theories of the original complaint; and (4) that the evidence, the findings of fact and conclusions of law are insufficient to support the judgment on any theory.

### The Record

Defendant, a real estate speculator dealing mostly in residential property, obtained a building permit to build a home on his lot at 789 Reliez Station Road, Lafayette, Contra Costa County. The lot was on a slope. Brock Purcell Company contracted with defendant to build the house and did all of the excavation, put in the foundation, and did most of the construction. Defendant testified that he was not present when the foundation was put in but he knew that the piers were about 12 feet deep. Defendant did not arrange for any soil tests on the property.

When construction was about to begin in July of 1960, Joseph E. Brooks, the owner of an adjacent lot, went to the construction site and asked defendant if he knew that there was a slide condition in the area. According to Brooks, defendant replied, "Don't worry about it. We are going to take care of all that." Brooks spoke to defendant because a

---

[1]A judgment was also entered by stipulation in favor of intervenor Contra Costa Mortgage Co., Inc., and against plaintiffs, to be satisfied pro rata out of any recovery by plaintiffs against defendant. No appeal is taken from this judgment.

landslide had occurred on Brooks' property in 1958. After speaking to defendant, Brooks wrote him a letter on July 11, 1960, stating that there was a spring located on the property under construction and that "In the event your building on this property creates any problems for me, I will look to you for restitution." Brooks enclosed a letter written to him in 1958, when the slide on his property occurred, from the Contra Costa County Flood Control & Water Conservation District. This letter stated that a county supervisor had inspected the drainage situation in the vicinity of Brooks' property, that the underground movement of subsurface water created a spring in the area and caused slides to occur, and that Brooks should engage a commercial soil testing laboratory to recommend a feasible drainage method.

Defendant testified that he knew there had been a slide on property located three to four hundred feet away from 789 Reliez Station Road, but did not remember any conversation with Brooks nor any correspondence with him.

The subject property was listed for sale and sold through Barcelon Realty. Plaintiff Edward S. Conolley, a real estate salesman, bought the property after giving it a brief examination to ascertain its suitability to house his family. He was aware that there was a culvert emptying onto what appeared to be a part of the lot, and he told Barcelon that he was concerned about the culvert and thought maybe there should have been a drain ditch. Accordingly, the agreement of sale was made conditional on Conolley's subsequent approval of the drainage conditions. However, after reexamining the house and being advised by Barcelon that the foundation was "built like the Rock of Gibraltar," Conolley deleted this condition from the agreement.

Plaintiffs took possession of the house in October or November of 1961, although the escrow did not close until February 16, 1962. On the night of February 16, 1962, while it was raining, a landslide occurred on plaintiffs' property. Water got under the house and it looked as if plaintiffs might lose the house. Barcelon helped them dig trenches to divert the water. On February 19, 1962, plaintiffs served a notice of rescission on defendant.[2]

Plaintiffs called Hugh M. O'Neil, a registered civil and structural engineer licensed by the State of California, a

---

[2] In October 1962 another slide occurred on the property.

graduate of Cal-Tech, who had practiced as a civil and structural engineer and consultant for over 25 years, as an expert witness. O'Neil maintains a soils mechanics department and has published articles on the subject. He made a study of the slide that occurred on plaintiffs' property and concluded that its primary cause was water moving into the soil and creating an unstable condition. Coincident with the slide, the water supply pipe burst and may have contributed to the slide action. O'Neil found two and one-half feet of fill on the land and stated that such slides are especially likely to happen if there is fill on the land, since its weight disturbs the equilibrium of the soil. His testimony indicated that the foundation of plaintiffs' house was unusually deep and strong and that the slide was not caused by any defects in construction of the foundation. He also stated that drainage galleries may prevent such slides as occurred here.

O'Neil testified further that he was familiar with the standards for drilling foundations in Contra Costa County and with the practices of contractors and developers in Contra Costa County during the period 1960-1961 and that the foundation piers used at 789 Reliez Station Road were so deep as to indicate to an experienced contractor or developer that an unusual soil condition existed on the property. He also testified that the average developer in Contra Costa County, upon becoming aware of a slide on property in the vicinity of an area he intends to develop, would call in a soil engineer if he were a competent and experienced developer. O'Neil did not know, however, what percentage of developers in Contra Costa County would call in soil engineers under those conditions.

Paul C. Hiatt, a licensed real estate broker and developer familiar with the standards of developers in Contra Costa County, who was called as a witness by plaintiffs, stated that a soil test probably would cost from $75 to $100 for an individual house and that one should be ordered if there is any question at all. He said one should always have a soil test when building on a hill if someone gives you any kind of a warning about it. He further stated that if a developer received the letters sent by Brooks to defendant and were orally advised that there was a spring and a slide in the area, he should check with the Flood Control District, hire an engineer, and get a soil test. He testified that he had had no personal experience with hillside building and had never built

in central Contra Costa County (where the subject property is located). He had had soil tests on commercial, but not on residential, property.

David Mackay, Jr., a developer in the area called as a witness by defendant, testified on cross-examination that if he were advised that there were springs and there had been a slide on a lot and a neighbor sent him letters like those sent by Brooks to defendant, he would re-inspect the lot and might possibly have engineering work done. If he as a developer had knowledge that an earth slide had occurred and that there might be underground water in the area, he would probably bring in a soils engineer.

A city building inspector testified that he investigated a complaint concerning the construction of the house at 789 Reliez Station Road and that there were then no visually observable drainage problems. He further testified that there had been drainage problems in other areas of that tract.

### Qualifications of Expert Witnesses

Defendant contends that neither O'Neil nor Hiatt were qualified to testify to the standards of developers in Contra Costa County. This contention is without merit in the light of the rule applicable to the admissibility of the opinions of experts. ██ "The opinions of experts are admitted in matters which are not within the common experience of men so that the special knowledge of a person of skill and experience in the particular field may enable him to form an opinion, where men of common experience would not be able to do so. [Citations.]" (*Manney* v. *Housing Authority*, 79 Cal.App.2d 453, 459 [180 P.2d 69]; Code Civ. Proc., § 1870, subd. 9.)[3]
██ Accordingly, whether a witness is qualified to testify as an expert is within the sound discretion of the trial court, and its ruling will not be disturbed in the absence of a manifest showing of abuse of discretion. (*People* v. *Haeussler*, 41 Cal. 2d 252, 261 [260 P.2d 8]; *Darling* v. *Pacific Elec. Ry. Co.*, 197 Cal. 702, 714 [242 P. 703]; *Mirich* v. *Balsinger*, 53 Cal.App.2d 103, 114 [127 P.2d 639].)

██ O'Neil, as a practicing civil engineer familiar with

[3]Section 1870 of the Code of Civil Procedure, which was in force when the instant case was tried, provided in pertinent part that "[E]vidence may be given upon a trial of the following facts: . . . 9. . . . his [a witness] opinion on a question of science, art, or trade, when he is skilled therein; . . ." This section was superseded on January 1, 1967 by sections 720 and 801 of the Evidence Code which state the law as declared in the predecessor section.

soil drainage problems in Contra Costa County and as a consultant in that county for over 25 years, was competent to testify to the probable cause of the slide. In view of these qualifications the trial court was entitled to believe his testimony that he was familiar with the standards of developers in Contra Costa County. The mere fact that O'Neil did not know what percentage of developers might call in a soil engineer did not automatically disqualify him from testifying to practices among real estate developers and contractors but only went to his credibility. ██ There is abundant authority, moreover, that expert evidence on the existence of a particular custom, usage or mercantile practice is admissible. (See *California Western States etc. Co.* v. *Feinstein,* 15 Cal. 2d 413, 424 [101 P.2d 696, 131 A.L.R. 608] ; *Alta Planing Mill Co.* v. *Garland,* 167 Cal. 179, 183 [138 P. 738]; *Anaheim Builders Supply, Inc.* v. *Lincoln Nat. Life Ins. Co.,* 233 Cal. App.2d 400, 412 [43 Cal.Rptr. 494] ; *Wallace* v. *Speier,* 60 Cal.App.2d 387, 392-393 [140 P.2d 900]; contra, *Wise* v. *Reeve Electronics, Inc.,* 183 Cal.App.2d 4, 9 [6 Cal.Rptr. 587] ; *Dutcher* v. *City of Santa Rosa High School Dist.,* 156 Cal.App.2d 256, 263 [319 P.2d 14] ; and see Witkin, Cal. Evidence (2d ed. 1966) § 424, p. 384.)

██ With respect to Hiatt, his qualifications as a licensed real estate broker and a developer familiar with the standards of developers in Contra Costa County justified the admissibility of his testimony as to the standards and customs of his own profession. (See *Vallejo etc. R.R. Co.* v. *Reed Orchard Co.,* 169 Cal. 545, 570 [147 P. 238] ; *Richfield Oil Corp.* v. *Crawford,* 39 Cal.2d 729, 741 [249 P.2d 600] ; *Natural Soda Products Co.* v. *Los Angeles,* 109 Cal.App.2d 440, 443 [240 P.2d 993] ; and see Witkin, Cal. Evidence (2d ed. 1966) § 420, p. 380.) The fact that Hiatt had never personally built on a hill or in central Contra Costa County goes only to the weight of his testimony.

### Amendment of Pleadings

Plaintiffs' original complaint for rescission and restitution alleged that defendant improperly and negligently cut, filled, graded, and compacted the land and that he falsely represented that the land was properly filled. As a second cause of action the complaint alleged breach of an implied warranty that the real property was ready and fit for occupancy and use as a private home, and as a third cause of action breach of an express warranty that the property was fit for residential

use. Before trial the first cause of action of the complaint was amended to allege fraud by concealment, stating that defendant knew or should have known that the real property was unstable and in danger of subsidence.

At the trial, after defendant put in his evidence, the court stated to counsel that there was evidence of negligence and evidence which might call for the application of the rule of strict liability in tort declared in *Greenman* v. *Yuba Power Products, Inc.*, 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].[4] The court then inquired of counsel whether the change of theory caused anyone to need more time, and defendant replied, ''I don't need more time.'' Following the submission of the cause, the trial court filed its memorandum opinion indicating that it had concluded that defendant was liable to plaintiffs on the negligence and strict liability theories. Thereafter, plaintiffs filed an amendment to conform to proof by adding to the complaint a fourth cause of action alleging negligence and a fifth cause of action alleging strict liability. Defendant thereupon moved to strike the ''Amendment of Complaint to Conform to Proof'' and demurred to this amendment. The record is silent as to whether a hearing was held on these matters or whether the trial court formally ruled on these pleadings.

The findings of fact subsequently filed by the trial court found that defendant did not negligently cut, fill, compact or grade the real property and did not make any actionable false representations or fraudulently conceal any facts with respect to the condition of the land, but found that defendant was negligent in permitting the house to be built without providing adequate soil drainage and found that in his capacity as a real estate developer he failed to provide adequate drainage upon said property.[5] From these findings the trial court concluded that defendant's failure to provide proper and adequate drainage constituted negligence and also that he was ''absolutely liable'' to plaintiffs for such failure, to plaintiffs' damage in the sum of $9,925.46.

██ Preliminarily, we note that amendments to conform to proof are liberally permitted provided that recovery is

---

[4]The court also mentioned to counsel earlier in the proceedings, before defendant put in evidence, that they should read the *Greenman* case.

[5]The trial court essentially found that all of the allegations of the fourth and fifth causes of action of the amended complaint to conform to proof were true. By these findings it is apparent that the trial court had rejected defendant's objections to these amendments.

sought on the same general set of facts as originally alleged and there is no prejudice to the adverse party (*Austin* v. *Massachusetts Bonding & Ins. Co.*, 56 Cal.2d 596, 600-601 [15 Cal.Rptr. 817, 364 P.2d 681]; *Wilson* v. *Bittick*, 63 Cal.2d 30, 37-38 [45 Cal.Rptr. 31, 403 P.2d 159]; *Weinstock* v. *Eissler*, 224 Cal.App.2d 212, 233-235 [36 Cal.Rptr. 537]; see also *Simons* v. *County of Kern*, 234 Cal.App.2d 362, 367-370 [44 Cal.Rptr. 338]; *Landis* v. *Superior Court*, 232 Cal.App.2d 548, 555-556 [42 Cal.Rptr. 893]); and that amendments to conform to proof relate back to the original pleadings and there is no barrier of the statute of limitations. (*Wilson* v. *Bittick*, *supra*; *Austin* v. *Massachusetts Bonding & Ins. Co.*, *supra*.)

In the instant case the amendments to conform to proof are based upon the same general set of facts as in the original complaint. Although the original complaint charged fraud and breach of warranty in the sale of the property and negligent filling and grading of the land, while the amendments charged the failure to provide adequate drainage, it is apparent that the amendments do no more than express a change of legal theory underlying the original complaint. The defendant's act for which plaintiffs seek recovery is the same —the sale by defendant to plaintiffs of real property which was unstable and in danger of subsidence. The primary right for the violation of which plaintiffs seek recovery is also the same—the injury and damage to the real property and the dwelling upon it caused by the alleged subsidence of property. Accordingly we conclude that the amendments to conform to proof, while expressing a change of legal theory, set forth the same legal obligation as in the original complaint and seek recovery upon the same general set of facts as originally alleged. (See *Wennerholm* v. *Stanford etc. of Medicine*, 20 Cal.2d 713, 718 [128 P.2d 522, 141 A.L.R. 1358]; *Weinstock* v. *Eissler*, *supra*, 224 Cal.App.2d at pp. 234-235.)

It is established, furthermore. that if a case is actually tried on the theory which is later added by an amendment to the pleadings, the adverse party suffers no prejudice from the variance. (See *Chelini* v. *Nieri*, 32 Cal.2d 480, 486 [196 P.2d 915]; *McAllister* v. *Union Indem. Co.*, 2 Cal.2d 457, 459 [32 P. 2d 650, 42 P.2d 305]; *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375, 382 [240 P.2d 580].) In this case, plaintiffs were clearly attempting to show from the testimony of their expert witnesses that defendant was negligent in not obtaining a soil

test and not providing proper drainage. Their expert witnesses testified repeatedly that the cause of the landslide was improper drainage on the filled lot and that competent developers in defendant's position would have secured a soil test. Defendant did not object to any of this testimony on the ground that it constituted a variance. Furthermore, when the trial court offered to continue the case in order to permit defendant to meet the change in theories, defendant insisted that he was not prejudiced and was ready to proceed. Under these circumstances it is clear that defendant was not misled to his prejudice and was on notice that plaintiffs relied on the nexus of operative facts surrounding defendant's conduct with respect to the drainage situation on the property. The court, therefore, did not err in permitting the pleadings to be amended to conform to proof.

The cases cited by defendant are not in point. *Brautigam* v. *Brooks,* 227 Cal.App.2d 547, 561 [38 Cal.Rptr. 784], holds that a defendant cannot amend his pleadings at the last minute to allege contributory negligence when such action would require plaintiff completely to alter his tactics in trying the case and would overly emphasize the issue of contributory negligence. Here, plaintiffs' tactics did not surprise defendant. *Pagett* v. *Indemnity Ins. Co.,* 54 Cal.App.2d 646, 649 [129 P.2d 700], states that an amendment that changes the cause of action is subject to a motion to strike. Since *Austin* v. *Massachusetts Bonding & Ins. Co., supra,* California courts no longer use the restrictive test of ''cause of action'' that was applied at the time of the *Pagett* case, but rather, as discussed, use the test of the nexus of operative facts to determine the propriety of an amendment. The *Pagett* case, therefore, does not apply to the case at bar.

### Motion Under Code of Civil Procedure Section 631.8

Defendant contends that since the court in its findings at the close of all the evidence found against plaintiffs on the first, second, and third causes of action which constituted all of the causes pleaded in the original complaint, the trial court abused its discretion in denying defendant's motion under Code of Civil Procedure section 631.8 which provides, in pertinent part, as follows: ''After a party has completed his presentation of evidence in a trial by the court, the other party . . . may move for a judgment. The court as trier of the facts shall weigh the evidence and *may* render a judgment in favor of the moving party, . . . or may decline to render

any judgment until the close of all the evidence. . . ." (Italics added.) ██ The purpose of section 631.8 is to enable the court, when it finds at the completion of the plaintiff's case that the evidence does not justify requiring the defendant to produce evidence in defense, to weigh the evidence and make findings of fact as in other trials. (*Columbia Engineering Co.* v. *Joiner,* 231 Cal.App.2d 837, 842 [42 Cal.Rptr. 241] ; *Greening* v. *General Air-Conditioning Corp.,* 233 Cal.App.2d 545, 550 [43 Cal.Rptr. 662].) In making this determination the judge weighs the evidence and draws such inferences as seem reasonable to him. (*Greening* v. *General Air-Conditioning Corp., supra,* at pp. 550-551.) ██ ·In the present case, the original complaint alleged negligence on the part of defendant, and plaintiffs presented some evidence of such negligence during their presentation of the evidence. At the conclusion of plaintiffs' case the trial court stated that there was evidence of negligence on the part of defendant and evidence which might call for the application of the rule of strict liability in tort. Accordingly, it is apparent that the trial judge concluded from his weighing of the evidence and drawing such inferences as seemed reasonable to him that there was sufficient evidence requiring defendant to produce evidence in defense of the theories which the trial court had then determined were present in the case. Under the circumstances there was no abuse of discretion in denying the motion.

*Sufficiency of the Evidence*

A. *Strict Liability*

██ The doctrine of strict liability in tort articulated in *Greenman* enunciates the principle that "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." (59 Cal.2d 57, 62; see also *Vandermark* v. *Ford Motor Co.,* 61 Cal.2d 256, 261 [37 Cal.Rptr. 896, 391 P.2d 168] ; *Seely* v. *White Motor Co.,* 63 Cal.2d 9, 15-19 [45 Cal. Rptr. 17, 403 P.2d 145].) Although the doctrine has been extended to the manufacturers of unwholesome food products and to a variety of other products that create as great or greater hazards if defective (see *Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d at pp. 62-63 and cases there cited), no case has extended the strict liability doctrine to sales of real estate.

In *Halliday* v. *Greene,* 244 Cal.App.2d 482, 486-487 [53

Cal.Rptr. 267], the court expressly refused to apply the products liability doctrine against the builder of an apartment house in which the tenants incurred injuries from a fall on an allegedly defective staircase. *Halliday* pointed out that in both *Sabella* v. *Wisler,* 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889] (liability for construction on loose fill) and *Dow* v. *Holly Mfg. Co.,* 49 Cal.2d 720 [321 P.2d 736] (liability for the installation of a defective gas heater), the contractor's liability rested on proof of negligence. In reaching this conclusion *Halliday* notes the important differences between products liability and construction cases as follows: '' [T]he builder or contractor is seldom in a position to limit his liability by express warranties and disclaimers and thereby defeat the recovery of an occupant injured by a defective building. In the second place, it is considerably less difficult for the occupant of a building to trace the source of a defect to the builder or the contractor than it is for a consumer to trace the source of a defect through the modern, complex system of manufacture. . . . Third, . . . the most important distinction lies in the opportunity to make a meaningful inspection of the retailed product as contrasted with inspection of a building before using it.'' (Pp. 486-487.) With respect to the third distinction referred to in *Halliday,* we note that plaintiffs in this case had an opportunity to inspect the drainage situation and in fact expressly made the sale agreement conditional on their approval of the drainage conditions, but then voluntarily deleted from the contract their right to inspect.

Although in *Halliday* the tenants of the building, rather than its purchasers, were the injured plaintiffs, we think the rationale of that case applies to this situation as well, where the injured purchasers seek recovery against the developer. The laws governing sales of real property, like those regulating landlord and tenant relationships, have developed along different lines than those laws governing sales of commercial goods. Thus, the Uniform Commercial Code does not treat the subject of express and implied warranties in contracts for the purchase of real property or in grant deeds. The property cases which have developed the relevant governing principles for this area of the law state no doctrine of strict liability in tort for sales of defective real estate. In view of the fact that sales of real estate normally take considerable time to transact, thus affording prospective purchasers ample time to assure themselves of the condition of the property, and in view of the distinctions pointed out in *Halliday,* we hold that

the strict liability in tort doctrine of *Greenman* has no application to this case.

## B. *Negligence*

Plaintiffs rely on *Sabella* v. *Wisler, supra,* 59 Cal.2d 21, wherein it was held that a contractor who constructed a house on inadequately compacted earth was liable to the purchasers of the house for damage resulting thereto from subsidence of the supportive earth upon the basis that the harm to the prospective purchaser was foreseeable when the house was constructed. Liability was there predicated on negligence in constructing the house upon inadequately compacted earth, according to the following rule enunciated in *Stewart* v. *Cox,* 55 Cal.2d 857, 863 [13 Cal.Rptr. 521, 362 P.2d 345] : '' [W]hether in a specific situation a defendant will be held liable for negligence causing harm to the property of another 'is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that he suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, and the policy of preventing future harm.' '' (59 Cal.2d at p. 28.)

 Applying the foregoing principles to the instant situation, there can be no question that plaintiffs were members of the class of prospective purchasers for which defendant admittedly constructed the house and that he owed them a duty of care in the construction. Our inquiry, therefore, focuses on whether harm to plaintiffs was foreseeable by defendant in the construction. In the instant case the trial court specifically found that defendant was negligent in constructing the house upon unstable and filled ground, containing an underground spring, without taking protective steps for providing adequate drainage. These findings were made in response to defendant's request for specific findings on the issue of negligence. Accordingly, we cannot infer findings but must look to the specific findings which have been made. (Code Civ. Proc., § 634; *Culbertson* v. *Cizek,* 225 Cal. App.2d 451, 465-466 [37 Cal.Rptr. 548] ; *Ruppert* v. *Jackson,* 212 Cal.App.2d 678, 682-683 [28 Cal.Rptr. 467] ; *Auer* v. *Frank,* 227 Cal.App.2d 396, 406 [38 Cal.Rptr. 684, 8 A.L.R.3d 1108].)

In the present case the trial court did not find that defendant was negligent because he constructed a house on filled

land or because he failed to procure a soil test, but found that he was negligent solely because he failed to provide for adequate drainage, the need for which (to prevent subsidence) would have been disclosed by a soil report. Although there is no evidence that a failure to procure a soil test proximately caused the landslide, there is evidence in the record that there was a spring on the property. Accordingly, there is evidence susceptible of the inference that a soil test would have disclosed the presence of the spring. Moreover, there is evidence in the record from which the inference could be drawn that a soil test would have disclosed the unstable condition of the soil. These circumstances, when coupled with O'Neil's testimony that the primary cause of the slide was the unstable condition of the land produced by a combination of water seepage and the weight of the fill on the sloping land, and his testimony that "various types of drainage galleries" are "often installed to cut off the flow of water before it gets into the slide," warranted the inference that a drainage system would have averted the landslide and that the failure to so provide proximately caused the landslide that damaged plaintiffs' property. This inference is particularly justified by the following testimony given by O'Neil: "If you dry the slide out or keep the water pressure out of it, it will stop the slide. The slide will not move if the water is kept out. You're not always sure you can get the water if it were this kind of slide movement. Sometimes it will come up from below. But if you do stop the water, you will stop the slide because the water is the primary cause of it."

O'Neil's testimony establishes, further, that the landslide, the harm that actually occurred, was a reasonably foreseeable result under the rationale of *Sabella* of building on a filled hillside lot in Contra Costa County. It is certain that plaintiffs suffered substantial damage to their property. The policy of preventing future harm, alluded to in *Sabella* and *Stewart*, will be served by requiring builders and developers carefully to investigate the condition of soil before building on hillside lots and to take proper precautions in such cases.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied February 16, 1968, and appellant's petition for a hearing by the Supreme Court was denied March 20, 1968.