[Civ. No. 33310. Second Dist., Div. Three. June 30, 1969.]

RUDOLF BRADLER et al., Plaintiffs and Appellants, v. C. DICK CRAIG et al., Defendants and Respondents.

John M. Sink for Plaintiffs and Appellants.

Westwick, Collison & Talaga, Griffith & Thornburgh and Peter J. Samuelson for Defendants and Respondents.

SCHWEITZER, Acting P.J.—By their second amended complaint, plaintiffs seek damages for alleged negligent construction of a house against the general contractor, C. Dick Craig, and the construction and purchase money lender, Santa Barbara Savings and Loan Association. General demurrers, filed by both defendants, were sustained with leave to amend. Plaintiffs failed to amend within the time allowed by the court and the action was dismissed as to these defendants. (Code Civ. Proc., § 581, subd. 3.) Plaintiffs appeal from the separate judgments of dismissal.

### The Pleadings

(1) *The Complaint.* The complaint alleges that Craig was a licensed general contractor; that during the period January 1,

1948 to June 30, 1948, Craig and others were engaged as general contractors in planning, designing, grading, cutting, filling, compacting and developing a lot located at 2601 Montrose Place, Santa Barbara County, and in constructing a house thereon; that Santa Barbara Savings and Loan Association (hereafter referred to as Santa Barbara) was the purchase and construction money lender with respect to said lot and four other lots; that the five lots were purchased at the same time by the same person (unidentified), each for the purpose of development and resale; that Santa Barbara financed the construction of the house at 2601 Montrose Place and in connection therewith "approved the plans and specifications and construction methods used and supervised and inspected and approved the finished structure," and in addition recorded the notice of completion on June 29, 1948; that both defendants knew at the time "that said property contained adobe, or expansive soil, requiring special structural safeguards which were not included in this house and knew that said property (and house) would thereafter be bought, owned and occupied as a residence by persons other than the then owner or owners of said lot."

The complaint further alleges that Craig negligently prepared the building site and negligently constructed the house; that Santa Barbara "negligently supervised, inspected, financed and approved said work"; that the negligent acts consisted of locating the house on unsteady ground, the installation of septic tanks too near the house, and the laying of water, sewer and leach lines upon unstable footings and with improper closures without compensating safeguards; that defendants knew that, due to the expansion, contraction and movement of the adobe soil, the house would be damaged as a proximate result of their negligence; that defendants knew that during construction of the house, the soil caused some damage to the house, and that instead of correcting the fault, defendants made only superficial repairs; that on information and belief plaintiffs allege that "some or all of the persons who owned this property before plaintiffs bought it knew [of the foregoing defects]."

Plaintiffs allege that they bought the house on June 1, 1966, from Leona Cornwall, a defendant but not a party to this appeal; that at the time of purchase plaintiffs were unaware of the defects and there was nothing apparent that would put them on notice of any defective condition; that commencing in August 1966, as a direct and proximate result of the negli-

gence of Craig and Santa Barbara, the soil caused damage to the house to the extent that it is "gradually becoming dangerous and unsuitable for human habitation"; that on information and belief plaintiffs allege that "the cracks in said structure . . . which started in about August 1966, are not cracks that had occurred at any time before plaintiffs bought this property. . . ." Plaintiffs seek as damages their purchase price, the cost of stopgap repairs, and moving and demolition expense when the house becomes uninhabitable.

(2) *The Demurrers.* Craig's demurrer was sustained on the grounds that the complaint failed to state a cause of action in that (1) it failed to allege that Craig was a developer who held out the completed building for sale to the public generally, and (2) the action is barred by the statute of limitations. (Code Civ. Proc., § 338, subd. 2, three-year limitation for action for injury to real property.) Craig's demurrer was also sustained on the additional ground that the purported cause of action was uncertain in that it could not be ascertained therefrom when plaintiffs' predecessors in interest became aware of any defects in the house and lot.

Santa Barbara's demurrer was sustained on the grounds that the complaint failed to state a cause of action in that (1) it failed to allege that Santa Barbara negligently supervised, inspected, financed, and approved the work on the house for sale to the public generally; (2) it failed to allege that Santa Barbara owed a duty to plaintiff; and (3) it failed to allege a joint venture between Craig and Santa Barbara. Santa Barbara's demurrer was also sustained on the additional ground that the purported cause of action was uncertain in that the identity of the person who allegedly purchased the five lots with a loan from Santa Barbara could not be ascertained therefrom. Santa Barbara's demurrer on the ground that the action was barred by the statute of limitations (Code Civ. Proc., § 338, subd. 2) was overruled.

(3) *Construction of Pleadings.* ■ Since plaintiffs have elected not to amend their complaint, a strict construction of the pleadings is required. For the purpose of this appeal we must assume that they pleaded as strong a case as they can (*Sierra Inv. Corp.* v. *County of Sacramento,* 252 Cal.App.2d 339, 341 [60 Cal.Rptr. 519]) and that the facts alleged in their complaint are true. (*Hauger* v. *Gates,* 42 Cal.2d 752, 755 [269 P.2d 609]; 2 Witkin, Cal. Procedure (1954) Pleading, § 213.)

## The Statute of Limitations

The complaint is based upon negligent conduct in 1948. An action thereon would therefore be barred in 1951 (Code Civ. Proc., § 338. subd. 2) unless plaintiffs can bring themselves within the judicially developed exception that in "[a]ctions based on progressively developing or continuing wrongs where nature, extent or permanence of the harm are difficult to discover" the running of the statute is postponed "until the time of discovery of (or opportunity to discover) the facts." (1 Witkin, Cal. Procedure (1954) Actions, § 113.)

This exception was considered recently in *Oakes* v. *McCarthy Co.*, 267 Cal.App.2d 231 [73 Cal.Rptr. 127], a suit for damages allegedly resulting from negligent soil preparation, brought by a homeowner against the subdivider-builder, where the court said at page 255: "Only when the consequential damage is sufficiently appreciable to a reasonable man may we hold an owner to a duty of expeditiously pursuing his remedies. As to when the consequential damage reached this point was a question of fact. [Citations.] And the ultimate issue as to whether the cause of action for negligence was barred by the statute of limitations became a mixed question of law and fact. [Citations.] It was, therefore, proper to submit the issue to the jury under proper instructions of law."

The showing of excuse for late filing must be made in the complaint. The only allegations in the complaint to excuse the delay are set forth in paragraphs V and VI thereof: "Plaintiffs are further informed and believe and upon that ground allege that the cracks in said structure hereinbelow described,[1] which started in about August 1966, are not cracks that had occurred at any time before plaintiffs bought this property; also, that some or all of the persons who owned this property before plaintiffs bought it knew, by reason of facts and circumstances not presently known to plaintiffs, that said house and property were defective as hereinabove set forth."[2] (Par. V.) "At the time of purchase [1966], plain-

---

[1] "[T]he soil and water underneath and around said house began to settle, move, expand, contract and exert stress against and throughout said house, and said house began to settle, move, crack, become disaligned and split open. . . ." (Par. VII.)

[2] ". . . to locate said house on unsteady ground, including expansive soil, and to build or install one or more septic tanks too near said house, and to lay water, sewer and leach lines improperly and upon unstable footings and with improper closures, all without compensating structural safeguards. . . ." (Par. V.)

tiffs were unaware of any defects in said house and property; the appearance of said house and property was not such to suggest or put plaintiffs on notice of any defective condition at that time." (Par. VI.)

Under *Oakes, supra,* the statute commenced to run when "the consequential damage is sufficiently appreciable to a reasonable man." Plaintiffs allege this was August 1966. Although they allege their predecessors in interest knew of the alleged defects, there is no allegation as to when the prior owners acquired such knowledge, or whether the defects caused any appreciable damage during the 18-year period before plaintiffs purchased the property. Knowledge or notice of defects or damage that came to the attention of their predecessors in interest would be imputed to plaintiffs as of the date thereof. Likewise, if the facts imposed a duty on plaintiffs' predecessors in interest, plaintiffs are chargeable with that duty as of the date the facts became known. If the defects were such that a reasonable man would have taken corrective action, the statute would commence to run. If there was damage as a result of such defects and such damage met the test of *Oakes,* the statute would commence to run.

"The showing of excuse for late filing must be made in the complaint. Formal averments or general conclusions to the effect that the facts were not discovered until a stated date, and that plaintiff could not reasonably have made an earlier discovery, are useless. The complaint must set forth specifically (1) the facts of the time and manner of discovery; and (2) the circumstances which excuse the failure to have made an earlier discovery." (2 Witkin, Cal.Procedure (1954) Pleading, § 479.) Although this quotation relates to delay in filing fraud and mistake actions, we see no reason why it is not applicable to this case.

It is our opinion that the burden was on plaintiffs to excuse their late filing by affirmative allegations as to the date of acquisition of knowledge or notice of the defects by the prior owners and as to the date of first appreciable damage as a result of the defects. This plaintiffs have not done. Their complaint is barred by the statute of limitations.

### Duty Owed by Defendants

The fact that a building contractor and the construction money lender were not in privity of contract with the purchaser of the improved property does not absolve them of liability for negligence in creating an unreasonable risk of harm to the purchaser. (*Connor* v. *Great Western Sav. & Loan*

*Assn.,* 69 Cal.2d 850, 865-868 [73 Cal.Rptr. 369, 447 P.2d 609]; *Sabella* v. *Wisler,* 59 Cal.2d 21, 27-30 [27 Cal.Rptr. 689, 377 P.2d 889]; *Dow* v. *Holly Mfg. Co.,* 49 Cal.2d 720, 724-728 [321 P.2d 736]; *Kriegler* v. *Eichler Homes, Inc.,* 269 Cal.App.2d 224, 226-229 [74 Cal.Rptr. 749]; *Oakes* v. *McCarthy Co.,* 267 Cal.App.2d 231, 247-249 [73 Cal.Rptr. 127]; *Conolley* v. *Bull,* 258 Cal.App.2d 183, 197-198 [65 Cal. Rptr. 689].)

As stated in *Connor, supra,* at page 865: " 'Privity of contract is not necessary to establish the existence of a duty to exercise ordinary care not to injure another, but such duty may arise out of a voluntarily assumed relationship if public policy dictates the existence of such a duty.' [Citations.] The basic tests for determining the existence of such a duty are clearly set forth in *Biakanja* v. *Irving,* . . . 49 Cal.2d 647, 650, as follows: 'The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection suffered between the defendant's conduct and the injury suffered; [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.' "

(1) *Duty Owed by Lender.* The question as to whether Santa Barbara had a duty to purchasers of the property requires an analysis of *Connor.* In *Connor* plaintiffs purchased homes in a tract development built by Conejo Valley Development Company and financed by Great Western Savings and Loan Association. Thereafter the homes suffered damage as the result of the placement of slab foundations on adobe soil without precautions recommended by soil engineers. Plaintiffs sought to hold Great Western on either of two theories: (1) that its participation brought it into a joint venture with Conejo which made it vicariously liable for Conejo's negligence; or (2) that it breached an independent duty of care to plaintiffs. Nonsuits were granted and the Supreme Court reversed on the latter ground only.

Great Western's connection with the development can best be summarized by the following excerpt from the court's opinion, which clearly distinguishes Great Western's participation from Santa Barbara's alleged participation in the instant case: "Although the evidence establishes that Great

Western and Conejo combined their property, skill, and knowledge to carry out the tract development, that each shared in the control of the development, that each anticipated receiving substantial profits therefrom, and that they cooperated with each other in the development, there is no evidence of a community or joint interest in the undertaking. Great Western participated as a buyer and seller of land and lender of funds, and Conejo participated as a buyer and seller of homes. Although the profits of each were dependent on the overall success of the development, neither was to share in the profits or the losses that the other might realize or suffer. Although each received substantial payments as seller, lender, or borrower, neither had an interest in the payments received by the other. Under these circumstances, no joint venture existed. [Citations.]

"Even though Great Western is not vicariously liable as a joint venturer for the negligence of Conejo, there remains the question of its liability for its own negligence. Great Western voluntarily undertook business relationships with . . . Conejo to develop the Weathersfield tract and to develop a market for the tract houses in which prospective buyers would be directed to Great Western for their financing. In undertaking these relationships, *Great Western became much more than a lender content to lend money at interest on the security of real property. It became an active participant in a home construction enterprise. Its financing, which made the enterprise possible, took on ramifications beyond the domain of the usual money lender.* It received not only interest on its construction loans, but also substantial fees for making them, a 20 percent capital gain for 'warehousing' the land, and protection from loss of profits in the event individual home buyers sought permanent financing elsewhere." (Italics added.) (69 Cal.2d 850, 864.)

In the instant case plaintiffs seek to hold Santa Barbara liable in negligence on the following allegations: Santa Barbara loaned money to an unidentified person to purchase five lots and build houses thereon for sale to the public; Craig constructed plaintiffs' house on one of the lots; Santa Barbara was the construction money lender; Santa Barbara "approved the plans and specifications, and construction methods used and supervised and inspected and approved the finished structure" (par. IV) and recorded the notice of completion; and Santa Barbara knew "that said property contained adobe, or expansive soil, requiring special struc-

tural safeguards which were not included in this house.''
(Par. IV.) The location and disposition of the other four lots
is not indicated; the allegations with respect thereto appear to
have no relevancy.

Santa Barbara's alleged participation was that of the usual
and ordinary construction and purchase money lender, con-
tent to lend money at interest on the security of real property.
Approval of plans and specifications, and periodic inspection
of houses during the construction is normal procedure for any
construction money lender. The allegation that it supervised
construction is a conclusion and will be disregarded. Unlike
*Connor*, its financing did not take on ''ramifications beyond
the domain of the usual money lender.'' (*Connor*, p. 864.)
Unlike *Connor*, it was not financing the development of a
large tract wherein it sought to receive substantial fees for
making construction loans. Unlike *Connor*, it did not receive a
fee for ''warehousing'' the land. Unlike *Connor*, it received
no guarantee from loss of profits in the event a home buyer
sought permanent financing elsewhere. Unlike *Connor*, it was
not ''preoccupied with selling prices and sales.'' (*Connor*,
p. 860.)

In *Connor* the Supreme Court held that each of the six
factors of *Biakanja, supra*, were present and therefore a duty
was imposed on Great Western to the buyers of the homes to
exercise reasonable care to protect them from damages caused
by major structural defects. In its analysis of the facts in
connection with the first test, ''the extent to which the trans-
action was intended to affect the plaintiff,'' the court said at
page 865: ''The success of Great Western's transactions
with . . . Conejo depended entirely upon the ability of the
parties to induce plaintiffs to buy homes in the Weathersfield
tract and to finance the purchases with funds supplied by
Great Western. Great Western's agreement to supply funds
to Conejo to build homes in return for a 5 percent construc-
tion loan fee and 6.6 percent interest, was on condition that a
sufficient number of persons first made commitments to buy
homes. Great Western agreed to warehouse land for Conejo on
the understanding that the land would be used for a residen-
tial subdivision. Great Western also stipulated that advances
from its construction loans would be used by Conejo to exer-
cise repurchase options, thereby affording Great Western the
opportunity for a $30,000 capital gain. Finally, Great West-
ern took steps to have Conejo channel buyers of homes to its

doors for loans, extracting a 1 percent loan fee from Conejo in the process.''

There is little similarity between Great Western's activity in *Connor* and Santa Barbara's in the instant case. In *Connor* the lender was an active participant; its activities had a direct and major effect on the plaintiffs and others in their class. In the instant case Santa Barbara's alleged participation had little or no effect on plaintiffs. Its participation appears to have been limited to that of a conventional construction lender. It had no interest as to whether the property was sold, rented or occupied by the builder. It had no interest as to whether he made a profit on the sale or as to terms of sale. It was content to merely loan money at interest on the security of the property; its supervision was for this limited purpose. We hold that under the first—*Biakanja* test, Santa Barbara's participation was so minimal and restricted that it had no effect on plaintiffs; that as a result, Santa Barbara owed purchasers of the property, including plaintiffs, no legal duty to protect them from damages caused by defects in construction, and that the demurrer was properly sustained on this ground.

(2) *Duty Owed by Contractor.* The second, third and fourth factors of *Biakanja* are considered together. Can we say that the injury that occurred 18 years after the act was foreseeable? Can we say with certainty that the injury was the result of the alleged negligent act 18 years before? Can we say there was a close connection between the contractor's conduct and the injury? Is one who negligently manufactures a product liable to a third party not in privity for injury due to such defects for an infinite period? This question has been posed in several products liability cases. In *International Derrick & Equipment Co.* v. *Croix* (5th Cir. 1957) 241 F.2d 216, 221, it was urged that public policy requires some definite limitation of liability on a manufacturer. In upholding the jury verdict in favor of plaintiff, injured as the result of a defect on a derrick, the court held that the lapse of seven years did not per se relieve the manufacturer of liability. In *Lynch* v. *International Harvester Co.* (10th Cir. 1932) 60 F.2d 223, recovery was denied on the ground that the allegedly defective threshing machine had been in use for over five years. In *Gomez* v. *E. W. Bliss Co.*, 27 Misc.2d 649 [211 N.Y.S.2d 246], a nonsuit was upheld where it appeared that the allegedly defective power press that injured plaintiff had been in daily use for over nine years. We have been unable to

find any California case that discusses the effect the passage of time has on the duty owed by a manufacturer to a person not in privity. Although it might be said that the subject poses a question of fact in each case, it appears to us that since public policy dictates the existence of a duty on the negligent manufacturer as an exception to the rule of privity, public policy should also dictate that the courts be reasonable in their application of the exception and in extreme cases hold as a matter of law that the duty has lapsed.

Normal deterioration and the probability of intervening contributory acts, known to a plaintiff (or his predecessors in interest) but not to the defendant, affect the property each day and year. The plaintiff or his predecessors in interest are in control and possession of the property and know of its use (or abuse). Due to the passage of time the defendant conceivably has destroyed his records, forgotten the job or product, lost track of his employees, and is left at the mercy of plaintiff. These considerations are especially true in the instant case where plaintiffs affirmatively alleged that their predecessors in interest had knowledge of the defects (par. V) during the 18-year intervening period, apparently suffered no injury and took no corrective action. Prompt action upon receipt of knowledge conceivably could have minimized or even prevented the alleged injury in August 1966.

 We hold that under the facts of this case, as a matter of law, any legal duty the contractor had to protect purchasers of the property from damages caused by defects in construction has expired by lapse of time.

Judgments affirmed.

Shinn, J.,* concurred.

Cobey, J., concurred in the judgment.

Appellants' petition for a hearing by the Supreme Court was denied August 27, 1969. Mosk, J., was of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.