[Civ. No. 45641. Second Dist., Div. Three. Nov. 24, 1975.]

DONNETTA DRAKE et al., Plaintiffs and Appellants, v.
MORRIS PLAN COMPANY OF CALIFORNIA,
Defendant and Respondent.

**COUNSEL**

Sidney E. Horvitz, Bennet Olan and Al Schallau for Plaintiffs and Appellants.

Edward S. Mack and Robert L. Graham for Defendant and Respondent.

## OPINION

**ALLPORT, J.**—In a first amended complaint for wrongful death it is alleged that on or about August 30, 1973, an automobile financed by defendant Morris Plan Company of California, sold by defendant Arthur Oropeza dba Arts Motor Sales and being operated by defendant Willie Bill Stafford collided with an automobile being operated by Ernest Drake, proximately resulting in the death of Drake. It is further alleged that Stafford was incompetent and unfit to safely operate an automobile on the public streets in that he was unlicensed and alcoholic with a history of arrests and convictions for driving under the influence of intoxicating beverages and drugs, hit and run, reckless driving with injury to others, driving without a license and with a revoked permit and that these facts were known or, in the exercise of reasonable care, should have been known to Oropeza and Morris Plan.

Additionally it is alleged that by providing the financing Morris Plan enabled and permitted Stafford to obtain the automobile from Oropeza knowing that Stafford intended to operate the automobile on the public streets. It is then alleged that Morris Plan and Oropeza negligently entrusted, financed and supplied the vehicle to Stafford, which conduct on their part was a proximate cause of Drake's death and plaintiffs' damage.

After giving plaintiffs an opportunity to amend a second time, which offer was expressly refused, a demurrer by Morris Plan to the first amended complaint was sustained without leave to amend and the cause dismissed as to that defendant. Plaintiffs appeal from the judgment of dismissal as to that defendant. The appeal lies. (Code Civ. Proc., § 904.1 subd. (a).)

### Contention

It is contended on appeal that the amended complaint did in fact state a cause of action requiring a reversal of the judgment.

### Discussion

With respect to the driving propensities of defendant operator Stafford, the complaint alleges that "said facts were known to defendants . . . or should have been known in the exercise of reasonable care by said defendants." ■ Pleading in the alternative is not permitted as the

opposing party is entitled to a distinct statement of the facts claimed by the pleader to exist. A statement in the alternative is uncertain and ambiguous (*Jamison* v. *King,* 50 Cal. 132, 136; *Cliff* v. *California Spray Chemical Co.,* 83 Cal.App. 424, 426-427 [257 P. 99]) and it is no answer to an objection to averments made alternatively to say that, if either of the averments is true, a cause of action is stated. (*Jamison* v. *King, supra,* p. 136.) The demurrer was, therefore, properly sustained. However, since the alternative pleading defect was not specifically attacked by either the general or special demurrer, we will ignore the defect in this instance and assume that plaintiffs can prove that Morris Plan loaned the money to enable Stafford to buy the automobile knowing that Stafford (an incompetent, unfit and unlicensed driver) intended to operate the vehicle on the public streets. (*Stigall* v. *City of Taft,* 58 Cal.2d 565, 567-568 [27 Cal.Rptr. 441, 375 P.2d 289]; *Bradler* v. *Craig,* 274 Cal.App.2d 466, 470 [79 Cal.Rptr. 401]; *Byrne* v. *Harvey,* 211 Cal.App.2d 92, 103 [27 Cal.Rptr. 110].)

Recognizing the novelty of the attempt to plead a cause of action against Morris Plan under these facts and invoking what is termed a modern trend of expanding tort liability, plaintiffs by analogy to the rationale of *Johnson* v. *Casetta,* 197 Cal.App.2d 272 [17 Cal.Rptr. 81], and of *Perez* v. *G & W Chevrolet, Inc.,* 274 Cal.App.2d 766 [79 Cal.Rptr. 287], argue that knowingly enabling an incompetent person to drive by financing his purchase of a motor vehicle creates liability to third persons under a theory of negligent entrustment espoused in such cases as *Rocca* v. *Steinmetz,* 61 Cal.App. 102 [214 P. 257]; *Kanananakoa* v. *Badalamente,* 119 Cal.App. 231 [6 P.2d 338]; *Knight* v. *Gosselin,* 124 Cal.App. 290 [12 P.2d 454]; *McCalla* v. *Grosse,* 42 Cal.App.2d 546 [109 P.2d 358].

Admitting that an owner of a motor vehicle may be held liable to third parties for negligently entrusting its use to an incompetent driver or where one, permitted by an owner to use the vehicle, does so, defendant insists the liability for such activity is limited to the actual supplier of the car and has not been nor should it be extended to one simply lending the money which enabled the purchase of the vehicle.

While none of the cases cited by either side is factually analogous to the case at bench, we deem the rationale of *Connor* v. *Great Western Sav. & Loan Assn.,* 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224], and *Biakanja* v. *Irving,* 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358], as restated in *Bradler* v. *Craig, supra,* 274 Cal.App.2d 466, 472-476, persuasive of our decision. In analyzing and distinguishing the Supreme

Court's holding in *Connor* and *Biakanja*, the court in *Bradler* said at pages 472-476:

"The fact that a building contractor and the construction money lender were not in privity of contract with the purchaser of the improved property does not absolve them of liability for negligence in creating an unreasonable risk of harm to the purchaser. (*Connor* v. *Great Western Sav. & Loan Assn.*, 69 Cal.2d 850, 865-868 [73 Cal.Rptr. 369, 447 P.2d 609]; *Sabella* v. *Wisler*, 59 Cal.2d 21, 27-30 [27 Cal.Rptr. 689, 377 P.2d 889]; *Dow* v. *Holly Mfg. Co.*, 49 Cal.2d 720, 724-728 [321 P.2d 736]; *Kriegler* v. *Eichler Homes, Inc.*, 269 Cal.App.2d 224, 226-229 [74 Cal.Rptr. 749]; *Oakes* v. *McCarthy Co.*, 267 Cal.App.2d 231, 247-249 [73 Cal.Rptr. 127]; *Conolley* v. *Bull*, 258 Cal.App.2d 183, 197-198 [65 Cal.Rptr. 689].)

"As stated in *Connor*, *supra*, at page 865: ' "Privity of contract is not necessary to establish the existence of a duty to exercise ordinary care not to injure another, but such duty may arise out of a voluntarily assumed relationship if public policy dictates the existence of such a duty." [Citations.] The basic tests for determining the existence of such a duty are clearly set forth in *Biakanja* v. *Irving*, . . . 49 Cal.2d 647, 650, as follows: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection suffered between the defendant's conduct and the injury suffered; [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." '

". . . . . . . . . . . . . . . .

"In the instant case plaintiffs seek to hold Santa Barbara liable in negligence on the following allegations: Santa Barbara loaned money to an unidentified person to purchase five lots and build houses thereon for sale to the public; Craig constructed plaintiffs' house on one of the lots; Santa Barbara was the construction money lender; Santa Barbara 'approved the plans and specifications, and construction methods used and supervised and inspected and approved the finished structure' (par. IV) and recorded the notice of completion; and Santa Barbara knew

'that said property contained adobe, or expansive soil, requiring special structural safeguards which were not included in this house.'

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Santa Barbara's alleged participation was that of the usual and ordinary construction and purchase money lender, content to lend money at interest on the security of real property. Approval of plans and specifications, and periodic inspection of houses during the construction is normal procedure for any construction money lender. The allegation that it supervised construction is a conclusion and will be disregarded. Unlike *Connor*, its financing did not take on 'ramifications beyond the domain of the usual money lender.' (*Connor*, p. 864.) Unlike *Connor*, it was not financing the development of a large tract wherein it sought to receive substantial fees for making construction loans. Unlike *Connor*, it did not receive a fee for 'warehousing' the land. Unlike *Connor*, it received no guarantee from loss of profits in the event a home buyer sought permanent financing elsewhere. Unlike *Connor*, it was not 'preoccupied with selling prices and sales.' (*Connor*, p. 860.)

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"There is little similarity between Great Western's activity in *Connor* and Santa Barbara's in the instant case. In *Connor* the lender was an active participant; its activities had a direct and major effect on the plaintiffs and others in their class. In the instant case Santa Barbara's alleged participation had little or no effect on plaintiffs. Its participation appears to have been limited to that of a conventional construction lender."

In the case at bench the allegations of the complaint do no more than establish that Morris Plan's participation in the transaction was that of a conventional money lender. As said at page 476 in *Bradler* of the lender therein, "It had no interest as to whether he made a profit on the sale or as to terms of sale. It was content to merely loan money at interest on the security of the property; its supervision was for this limited purpose." We hold likewise in the instant case that Morris Plan's participation in the sale of the vehicle was so minimal and restricted that the transaction did not create a legal duty on the part of the lender to protect plaintiffs from damages caused by Stafford's illegal use of his automobile and the demurrer was properly sustained. When one considers the fifth and sixth tests enunciated in *Biakanja, supra*, that of "the moral blame attached to

the defendant's conduct" and "the policy of preventing future harm . . ." it does not appear reasonable that a simple lender, even aware that the item being acquired by the borrower might be so used as to cause harm, should have the duty suggested by plaintiffs in this case. It is enough that such a duty may be imposed upon the actual seller. (Cf. *Skerlec* v. *Wells Fargo Bank,* 18 Cal.App.3d 1003 [96 Cal.Rptr. 434], wherein it was held that a lender did not have a legal duty to make sure a borrower had liability insurance.)

■ Vehicle Code section 14606 prohibiting the authorizing of an unlicensed person to drive does not per se prohibit the sale of a motor vehicle to an unlicensed driver. (*Johnson* v. *Casetta, supra,* 197 Cal.App.2d 272, 275-276.) We have examined the cases cited and relied upon by plaintiffs and find same factually distinguishable and not otherwise controlling of our decision herein.

The judgment is affirmed.

Cobey, Acting P. J., and Potter, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 21, 1976.