[Civ. No. 12829. First Dist., Div. Two. July 3, 1945.]

DICKA KLEIN, as Administratrix, etc., Respondent, v. FLORENCE M. FARMER, Appellant.

Augustin Donovan, Louis B. DeAvila and Rode, Burnhill & Rode for Appellant.

John L. McVey for Respondent.

GOODELL, J.—This is an appeal from a judgment and decree quieting the plaintiff's title to corporate stock.

The decedent, William Otto Emerson, died intestate on

December 24, 1940, at the age of 85 years. Shortly thereafter the appellant caused to be transferred from decedent's name into her own and reissued to herself certificates evidencing the ownership of 12 shares of American Telephone and Telegraph Company and 400 shares of Pacific Gas and Electric Company stock which he had assigned on the back thereof to her. A few days after decedent's death the appellant placed on record a deed made on the 7th, and acknowledged on the 8th day of February 1933, purporting to convey from decedent to appellant a piece of real property in Hayward. In a suit brought by Dicka Klein as successor in interest of decedent's sole heir at law, to quiet title to said real property, the judgment went against the defendant (appellant herein) and on appeal that judgment was affirmed by this court in *Klein* v. *Farmer*, 57 Cal.App.2d 542 [135 P.2d 21], where the statement of facts is sufficient to render unnecessary a repetition here.

While the instant case involves only the stock, it is intimately related to the other case for the reason that the record in that first case shows all the facts and circumstances under which the certificates of stock came into the possession of the appellant, as well as those under which the deed came into her possession. The certificates and the deed were together, the appellant received them at the same time, and whatever was said and done with respect to the deed was said and done with respect to the certificates. By stipulation the record in that case became the record in this case, and it is again before us on this appeal with but slight amplification.

The only new testimony *touching on delivery or possession of the certificates* was that of the appellant that immediately after decedent handed her the stock and the deed, in April, 1934, she discontinued her former business; also that on December 30, 1940, she turned over to her attorney the indorsed certificates for the purpose of having them transferred into her name and that was the first time she had consulted an attorney in this case. Also that one day about the year 1937 when she, her former husband and the decedent were in Oakland, decedent expressed a desire to visit appellant's safe deposit box and see the envelope containing the deed and stock certificates as he wanted to be sure the envelope was in a safe place; they visited the box and showed decedent the envelope. Appellant's former husband corrobo-

rated this, except he fixed the time as 1938 instead of 1937. He also testified that in 1938 he accompanied appellant to her safe deposit box and saw a large envelope, on the outside of which a statement was written in decedent's handwriting to the effect that it was to be opened at his death and placed on record. He also testified that decedent had said to him that he had transferred to appellant some stock in the Pacific Gas and Electric Co. and in the American Telephone and Telegraph Co. The witness Hazel Ford testified that three days after decedent's death appellant told her over the telephone that she had received in that morning's mail a letter by which decedent had given her the contents of the house. The appellant testified that this letter was included in the same envelope as the deed and the certificates. Respondent's attorney testified that after decedent's death appellant told him over the telephone that the letter by which decedent gave her the contents of the house came through the mail from an unknown source after the decedent's death.

The appellant was asked on cross-examination whether during the decedent's lifetime if she had ceased to stay with him, she would have returned the envelope and its contents to him, to which she replied that she would have on condition that she would be adequately paid for services rendered up until that time. On cross-examination the appellant testified that the decedent showed her the deed and put it in the envelope in which was some stock, the certificates for which he showed her. She knew how many shares there were but not the amount. She did not open each certificate "and look at the amount." She said by "amount" she meant the value of each certificate. She said "In my testimony I said he handed me the envelope and showed me the deed. I said, then he took it back to his desk and sealed it and put his stamps on it. I never said he handed me the sealed envelope." She said "The agreement was made altogether for the stock and the deed." She testified the decedent many times told her "Florence, when I am gone you will have about $600 net income and you will have this home for yourself. You can sell your home. I want you to live right here so the Boy Scouts and Girl Scouts can come here and enjoy themselves as much as they want. Don't leave the house. With $600 a year and this home you can live nicely."

The witness Edith Cohen testified that about 1938 or 1939

decedent had said to her that he didn't care for wills and was going to make everything right; that there would be no trouble when he left this world and he had given appellant a deed and he was going to look after things for her, what he thought was compensation for all she had done for him. A year later he repeated this—that he had given appellant a deed instead of a will.

A daughter of appellant testified that in 1938 she accompanied the appellant to her safe deposit box and saw in the box a large envelope with something written on it in decedent's handwriting.

None of this additional testimony materially changed the testimony in the first case with respect to *intent, delivery or possession*.

From what has been said it would seem to follow that as far as the questions or issues of intent, delivery and possession are concerned, the trial court in the instant case would be bound to find, on the same record, as it did, that there had been no delivery of the stock, unless the rules of law respecting the delivery of certificates of stock differ from those respecting the delivery of a deed. ■ We are satisfied that section 330.1, Civil Code, which in 1931 replaced section 324, made no change in the law with respect to delivery. The new section as well as the old, provides that transfer of title is effected by indorsement *and* delivery. With respect to section 330.1 this is said at 6A California Jurisprudence, page 653, section 364: "The ambiguity of the former statute is avoided, although it must be conceded that the courts had pretty well cleared it away by construction, with the result that the Transfer Act is largely declarative of settled and general law." And at page 656, it is said: "As was also the case under the former statute, if title is to pass by gift, it must pass by one of the legal modes. Where a gift of stock is made, there must be not only an intention to make the gift but a present vesting of title by indorsement and delivery of the certificate, whether the gift is causa mortis, or inter vivos." And at page 657 (§ 367) : "Ordinarily a contract for sale of shares is executed by the indorsement and delivery of the certificates, but as between the parties and for the purposes of the contract the passing of title is determined by their intent."

■ In the former case the trial court found "that the deed . . . was never delivered by said Emerson to said Flor-

ence M. Farmer, and that by reason of such fact the other issues herein . . . are immaterial and do not require any findings with respect thereto."

The trial court *in the instant case* found that it was orally agreed between decedent and appellant prior to April 9, 1934, that he would give her a deed to a parcel of his real property and some stock if she would come to work for him and remain in his employ throughout his remaining years; that he paid her a salary ranging from $40 to $65 a month during all that time. The court further found "that on April 9th, 1934, said Emerson handed an envelope, containing a deed . . . the stock here in controversy . . . and another paper to defendant Farmer, and at said time stated to her 'Now Florence this shows I will keep my part of the bargain and you keep yours and it is yours so long as you stay with me. If, at any time, you leave my employ you are to give me that envelope back in the same condition in which I give it to you; and if you are in my employ and I pass along it is yours'; on the envelope, after it had been sealed and a sticker put around it there was written on the envelope by said Emerson 'To be opened at my death and put on record immediately'. Defendant Farmer remained with said Emerson until his death, whereupon she recorded the deed and had the stock transferred to her own name." The court also found that decedent handed to appellant the certificates endorsed by him to her but also found "that it is not true that William Otto Emerson purported to or intended to sell, assign or transfer any interest in or to said stock . . . or any thereof, to defendant." The court further found ". . . that it is not true that the corporate stock . . . or any part thereof, was delivered by William Otto Emerson to defendant with intent to transfer ownership of or any interest in, the same, or any part thereof, to defendant, or was delivered to defendant at all," and that it "is not true that defendant ever has been or is now the owner of any of the corporate stock referred to in plaintiff's amended complaint."

This court held on the appeal of the first case that the evidence was sufficient to support the finding that the deed had not been delivered. On this same record on appeal this court cannot hold otherwise than it did in the first case (57 Cal.App. 2d 542) on findings which reach the same ultimate result as the earlier findings reached.

This was the course followed in the case of *Kimball* v. *Tripp,* 136 Cal. 631 [69 P. 428], which was a suit brought by one of the heirs of Elizabeth L. Cook, deceased, to set aside certain conveyances of lands and releases of interest therein, and certain assignments of mortgages made to the defendant by the deceased. Several years theretofore the administrator of Mrs. Cook's estate had sued said Tripp to recover from him certain personal property, or its value, alleged to belong to the estate and had been awarded a judgment from which an appeal was taken (*Knight* v. *Tripp,* 121 Cal. 674 [54 P. 267]). On appeal in the second case the court said, after discussing the findings, "These findings—which are not attacked by the specifications —bring the case, we think, within the authority of the decision in *Knight* v. *Tripp,* 121 Cal. 674 [54 P. 267]. This is clearly the case with reference to the assignments of the notes and mortgages, which come directly within the decision. Nor do we think the principle of the decision is less applicable to the conveyances of land. The lands were conveyed on the same trusts as the personal property; . . . The appellant in *Kimball* v. *Tripp* urged that the earlier judgment operated as an estoppel, but the court held otherwise on that point. *Kimball* v. *Tripp* is cited by us not for what it holds on the merits as to gifts, but simply as an illustration of how the judgment on appeal in the first case becomes authority in this case *on the issues of intent, delivery and possession* irrespective of the doctrine of res judicata. Our conclusion on this phase of the case renders unnecessary a discussion of the authorities cited by both sides on the subject of delivery.

The appellant claims that the court erred in its action on her alternative claim for a money judgment, sued on in her amended cross-complaint. In the present case when the appellant answered the first case had not yet been decided and she filed a cross-complaint herein in which she re-asserted her claim to the real property and the stock, but in addition to asserting those claims (which might be called her *primary* claims) she set up a *secondary* and *alternative* claim for a money judgment in case her *primary* claims failed. Appellant's claims (both primary and secondary) are based on an oral agreement which she alleges was made about April 9, 1934, between decedent and herself by the terms of which she entered his employ as his general housekeeper, nurse and companion and in *part payment* for which services she alleges he

agreed to pay her $40 a month *and* to convey to her the land and transfer to her the stock. It is further alleged that under this oral agreement she was to, and did, give up her business as a real estate broker, notary public and public stenographer so she could give the decedent as much time as was necessary during the usual day-time hours, and that about July 9, 1939, the agreement was modified whereby appellant was to, and did, stay in decedent's home during the nighttime as well as the daytime (because he needed more care and assistance), and whereby she was to receive $65 a month "as part consideration for said services" instead of the $40 theretofore paid, but that in other respects the agreement remained the same. She alleges full performance on her part; the presentation of her creditor's claim against the estate; its rejection, and that "there remains due, owing and unpaid . . . the sum of $12,442.50, no part of which has been paid." The claim is made a part of the cross-complaint by reference "as though set out at length herein." The prayer of the cross-complaint is, first, for a decree adjudging that the defendant is the owner of the land and the stock and, second, *"in the event it be judicially determined that this defendant is not the owner of said real property and of said corporate stock, that defendant have judgment against plaintiff as such administratrix, that plaintiff do pay to defendant in due course of administration, the sum of $12,442.50, as set forth in said claim; . . ."*

The claim attached to the pleading is a *contingent* claim and is so denominated. It contains a rather detailed statement of the appellant's position under the oral contract, as well as her assertion of title to both the land and the stock. It contains also the following statement: "That the reasonable value of claimant's services so performed by her to and for decedent from April 9th, 1934 to the date of his death on December 24th, 1940 was the sum of $175.00 to $200.00 per month; in the event that it should be judicially determined that claimant is not the owner of said real property and of said stock certificates, claimant presents this contingent claim against the estate of said decedent for the sum of . . . $12,442.50 . . . being the difference between the amount of cash paid to her by decedent as aforesaid and the actual value of said services being computed at the rate of $200.00 per month." The concluding part of the claim also shows that it is *"contingent upon the event that it should be judicially de-*

*termined that claimant is not the owner of said real property and of said stock.''*

At the trial the respondent objected to the testimony presented in support of the cross-complaint, and moved to strike out such testimony, on the ground that the cross-complaint did not state facts sufficient to constitute a cause of action. The court granted this motion, struck out the testimony and as a conclusion of law formally declared that the amended cross-complaint does not state facts sufficient to constitute a cause of action herein. The appellant attacks this ruling while the respondent presents several reasons supporting it.

First, the respondent claims that there is no allegation in the cross-complaint showing either the agreed or the reasonable value of appellant's services. A few lines back we quoted verbatim the statement of appellant under oath of the value of her services ($175 to $200 a month) *contained in her creditor's claim.* True, this statement was not repeated in words within the four corners of the pleading itself, but in the cross-complaint there is found a reference to the filing of this verified claim, *a copy of which,* the pleader alleges, *"is attached to defendant's Answer and Cross-complaint filed in this action and made a part hereof as though set out at length herein and marked 'Exhibit A'."* That such language in a pleading as that just emphasized by us is effective to incorporate into such pleading the statements found in an attached exhibit is held in the case of *Holly Sugar Corp.* v. *Johnson,* 18 Cal.2d 218 [115 P.2d 8], where the court says: ''. . . the complaint's distinct and definite reference to the attached verified protest for the avowed purpose of setting forth the grounds of objection to payment of the additional tax has the effect of incorporating into the body of the complaint the recitals of the exhibit as fully and to the same extent as if they were, in fact, directly made in the principal pleading. Accordingly, the truth of the allegations of the complaint together with those of the annexed exhibit is admitted by respondent's general demurrer, and both documents form part of the record before this court.'' The judgment in that case was reversed with directions to overrule the demurrer.

The cases cited by respondent on this question of incorporation by reference are not in point for the reason that, as pointed out in the Holly Sugar case, by appropriate language within the pleading itself the pleader's intent to make the

statements contained in the exhibit his own allegations, is made manifest, and the cases relied on by the respondent did not do that.

Moreover, even if it were not permissible to so incorporate by reference, a reading of the claim in connection with the pleading proper shows beyond doubt that the pleading, if itself deficient, is certainly susceptible of easy amendment to state by way of mere repetition therein what is already stated in the claim.

The second reason urged by the respondent why the amended cross-complaint does not state a cause of action is that no allegation is found therein that the appellant has restored or offered to restore the deed and the stock. In support of that contention the respondent relies on *Hill* v. *Den*, 121 Cal. 42 [53 P. 642]. Let us examine the situation in which the appellant found herself. The stock which she claims to have received as partial consideration for services rendered over a period of six years, is claimed by the respondent. The appellant claims in good faith that there was a good delivery of it to her. She has an unquestioned right to defend herself in this litigation and to carry it up on appeal, as she has done just as she had an unquestioned right to litigate with respect to the real property. If, as now contended, she cannot assert her *secondary* claim for money compensation without first restoring that which she maintains is hers, she would be forced to abandon her *primary* claim in the interest of a mere alternative one. The decision of the former case on appeal settled her claim to the real property adversely to her. The filing of the creditor's claim was not an afterthought, nor a last minute attempt by a shift to recapture something already lost; there was no way in which she could sit back and await the outcome of this litigation for by virtue of sections 700 and 707 Probate Code she had to present her claim within a limited time or forever waive it. Foreseeing the uncertainties of litigation, she filed a contingent claim and it shows plainly and frankly on its face that it is intended only as an alternative measure. She pursued a procedure analogous to that in replevin where a plaintiff prays, alternatively, for damages or the value of the goods, if the goods themselves are not recoverable. The appellant's alternative position, moreover, was taken in the same litigation as that in which her primary claim is asserted, which means that she cannot enjoy both remedies, and in the

judgment herein every claim which she asserts should be ultimately determined.

The rule followed in *Hill* v. *Den* requiring restoration or an offer to restore as a condition precedent to the maintenance of an action is the same as the rescission rule applied in many California cases. But the rule is subject to many and various exceptions discussed at some length in *Kelley* v. *Owens*, 120 Cal. 502 [47 P. 369, 52 P. 797], where it is said: "There are exceptional cases where restoration or an offer to restore before suit brought is not necessary—as, for instance, . . . where, without any fault of plaintiff, there have been peculiar complications which make it impossible for plaintiff to offer full restoration, although the circumstances are such that a court of chancery may by a final decree fully adjust the equities between the parties. . . ." (See, also, 4 Cal.Jur. 767 and 4 10-Yr.Supp. 287 and cases cited and *Shaffer* v. *Security T. & S. Bank*, 4 Cal.App.2d 707 [41 P.2d 948].) It would seem that the instant case is one presenting just such complications as those spoken of, and *there was no fault on the part of the appellant which caused them.* It would seem, further, that the court in this case can, by its judgment or decree, fully determine the rights of the parties.

The case of *California etc. Co.* v. *Schiappa-Pietra*, 151 Cal. 732, 739-742 [91 P. 593] contains an exhaustive review of this question. At page 740 it is said: "The authorities fully sustain the proposition that an offer to restore before action is not essential where the rights of the other party can be fully protected by the decree, and such restoration cannot be made without injuriously affecting the rights of the party seeking rescission, or the relative rights of the parties in the event of a rescission cannot be determined without an accounting. The statute itself dispenses with the necessity of such an offer where the other party is himself unable to restore what he has received. In such event an offer on the part of the rescinding party would be a vain thing, and the respective rights of the parties can be fully guarded by the decree." In the case at bar the services which the appellant claims to have rendered the decedent over a period of six years could not, of course, be "restored" by his estate. We conclude the discussion of this phase of the case by adopting the following from the last cited case (p. 741): "the facts of this transaction are exceedingly complicated, and it is very clear that the terms

upon which . . . the property received [can be] restored, can only be determined upon a judicial investigation, in which the rights of all the parties can be fully guarded. We are therefore of the opinion that the circumstances shown . . . fully justify the failure . . . to offer to restore possession of the property before the commencement of the action, and bring the case within those classes of cases in which no such offer is necessary as a condition precedent to action.''

The second ground just discussed is not, in our opinion, sufficient to support the ruling that no cause of action was stated and, for the reasons given and on the authorities cited, *Hill* v. *Den* is distinguishable.

■ The respondent contends that the first case, involving the title to the real property, is res judicata in this action (1) of the issues raised by the complaint and answer, and (2) of the issues raised by the cross-complaint and the answer thereto.

In the former case a complaint to quiet title to the real property described in the appellant's deed (and other real property deeded to George A. Gray not here involved) was filed within a month after the decedent's death. It alleged that the plaintiff, Dicka Klein, was the owner, subject to administration, and entitled to the possession of the real property; that the defendants claimed some right, title or interest in it, but that their claims were without right, and it prayed for a decree quieting plaintiff's title. The defendants Florence M. Farmer and George A. Gray answered denying plaintiff's ownership or right to possession and admitted and asserted their own respective claims. By way of cross-complaint the defendants alleged affirmatively their own ownership and right to possession, and that plaintiff claimed some right, title, or interest, but that such claims were without right and prayed for a decree quieting *their* title. The plaintiff then filed an answer to the cross-complaint, denying the defendants' claims. By an amended answer to the cross-complaint the plaintiff alleged, inter alia, that the deed to this appellant was never delivered and that there was no consideration for her deed. It then alleged that confidential relations existed between the decedent on the one hand and appellant and George A. Gray, her former husband, on the other, and that the appellant was employed by the decedent on a salary. It then alleged that the deed to appellant and the deed to her former husband, and large sums of money and

corporate stocks all of a value in excess of $20,000, were obtained by the defendants by undue influence. The findings were to the effect that the plaintiff was the owner and entitled to the possession of the real property claimed by the appellant, subject to administration, and that neither defendant had any right, title or interest therein. They found that the other defendant, George A. Gray, was the owner of the real property which *he* claimed. They found that the deed under which this appellant claimed "was never delivered . . . and that by reason of such fact the other issues herein as between plaintiff, Dicka Klein and defendant Florence M. Farmer are immaterial and do not require any findings . . ." and they negatived the charges of confidential relationship and undue influence. The conclusion of law was that appellant was entitled to no relief by her cross-complaint. The judgment cancelled and set aside the deed from the decedent to the appellant, and adjudged that plaintiff was the owner of the property described therein, subject to administration. That judgment was affirmed on appeal (57 Cal.App.2d 542) by this court on the ground already shown.

We have summed up the pleadings, findings and judgment in the first suit to show just what were the issues therein. The only issues raised by the complaint and answer and cross-complaint were as to the ownership of the real property. The cross-complaint set up only the appellant's claim to the real property. We are satisfied that under section 442, Code of Civil Procedure, the appellant could not have pleaded any cause of action with respect to the stock or with respect to anything other than the land under either the "transaction" clause or the "subject" clause of that section, and in saying that we are mindful of the recent cases (*California Trust Co. v. Cohn,* 214 Cal. 619 [7 P.2d 297], and others) which have enlarged the scope of that section, holding that "The facts surrounding the cause of action and not the form of the complaint are determinative of what constitutes the transaction." We are dealing now only with the question whether the judgment in the first case is res judicata, either as a bar or by way of estoppel, *as to the corporate stock.* We are satisfied it is not, for the reason that nothing with respect to personal property (not related to the real property in question) could have been litigated in that suit by way of cross-complaint or otherwise, even under the most enlarged interpretation of section

442, under the complaint which was filed therein. The present plaintiff might well have sued the appellant in that case to quiet title to both the real property *and* the corporate stock (Pro. Code, § 573) but did not see fit to do so. It is wholly unnecessary to discuss the many cases cited by both sides on the applicability, or not, of the doctrine of res judicata for we are satisfied that the pleadings in the first case, in the light of the authorities dealing with what can and what cannot be litigated in an ordinary suit to quiet title to land, and the provisions of section 442 settle the question, as far as the corporate stock is concerned.

That there are conflicts in the findings is not questioned by either side. In view of what has been held as to this court following, on this appeal, its earlier decision on substantially the same facts, and of the fact that there has to be a reversal on the ground already stated, it is not necessary to discuss these conflicts nor is it necessary for us to discuss the attacks which the appellant makes on the findings on the fifth defense (specification II of points relied on). On a retrial of the case the appellant should have the opportunity of laying before the court whatever evidence it has on the fifth defense, and new findings will, of course, be made thereon.

The trial court erred, in our opinion, in its conclusion of law No. 2 ''That the amended cross-complaint of defendant herein does not state facts sufficient to constitute a cause of action'' (specification V); in sustaining plaintiff's objection to the testimony taken in support of said amended cross-complaint, and in granting plaintiff's motion to strike said testimony (specification VI), for the reasons and on the authorities already given.

The judgment is reversed.

Nourse, P. J., concurred.

A petition for a rehearing was denied August 2, 1945, and respondent's petition for a hearing by the Supreme Court was denied August 27, 1945.