Filed 3/18/13  Friendship Missionary Baptist Church v. Washington-Allen CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| FRIENDSHIP MISSIONARY BAPTIST CHURCH,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARBELLA LYNNE WASHINGTON-ALLEN et al.,<br><br>    Defendants and Appellants. | B233965<br><br>(Los Angeles County<br>Super. Ct. No. NC 052443) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph E. DiLoreto, Judge.  Affirmed.

Marbella Lynne Washington-Allen, in pro. per., Lue Birder Washington, in pro. per.; Goode Hemme Peterson and Roger L. Heaton for Defendants and Appellants.

Law Offices of George T. Kelly and George T. Kelly for Plaintiff and Respondent.

* * * * * *

Friendship Missionary Baptist Church (Church), a nonprofit religious corporation, brought this lawsuit against appellants Marbella Lynne Washington-Allen (Marbella) and Lue Birder Washington (Lue)[1] primarily to determine who were the rightful parties to assume management of the Church after the death of the Church's leader, David Washington, Sr. (Washington). After a bench trial, the trial court ruled that Marbella was not in control of the Church; instead, the individuals supporting the lawsuit on behalf of the Church constituted the leadership body. Marbella and her sister Lue appealed from the judgment. We affirm.

## FACTS AND PROCEDURAL HISTORY

### 1. Verified Complaint

The Church, through its board of trustees, filed its verified complaint on January 30, 2009. The complaint alleged as follows. The Church is located in Long Beach, California and was founded in or around 1974. The Church, then called Friendship Baptist Church of Long Beach, acquired the Long Beach property by grant deed recorded on April 16, 1974. Around October 25, 1998, the Church changed its name to the current name. In 1998, the deacon board of the Church consisted of two deacons: Washington and Albert Brooks. Also at that time, the Church's board of trustees consisted of seven members: Washington, Brooks, Susie Kemp, Johnnie May Dyer, Jennie Williams, Rosetta Edwards, and Lue (who is Washington's daughter). The officers of the Church included Washington (chair), Lue (secretary), Williams (assistant secretary), and the board of trustees. Washington was the Church leader until his death.

In 1998, the Church opened a checking account on which Washington, Lue, and Williams were the authorized users and a savings account on which Washington and Lue were the authorized users. Around 2005, the Church learned that Washington's brother, Albert Washington (Albert), and Lue were conspiring to take over the Church and its

---

[1] Our use of certain individuals' first names is not intended to reflect a lack of respect. Because there are several relevant parties who share the surname Washington, our use of their first names is meant to avoid confusion and is a convenience to the reader.

assets, including the money in the bank accounts. Albert and Lue incorporated the name "Friendship Missionary Baptist Church of Jesus Christ" – a name nearly identical to the Church's name – in 2004 in furtherance of their plan. On March 5, 2005, the Church passed a resolution to dismiss Albert as a pastor and remove Lue as a member, officer, and authorized user of Church bank accounts. Williams then assumed Lue's duties as Church secretary. Washington closed the Church's existing savings account and opened a new one. The Church's practice was to deposit all offerings and tithes into the savings account and transfer only the money needed to cover bills to the checking account.

In September 2008, Washington became ill and was hospitalized. During this time period, he expressed concerns to Church members that his other daughter, Marbella, was trying to take advantage of him and was attempting to steal Church money and assets. He died on December 4, 2008.

Before Washington's death, Eddie Richardson was added to the Church deacon board. Following Washington's death, the deacon board thus consisted of Brooks and Richardson. The board of trustees consisted of the same members who made up the board in 1998, except that Washington and Lue were no longer members. The officers of the Church consisted of Williams (secretary) and the board of trustees. Around January 2009, the Church discovered Marbella had somehow become the sole authorized user of the Church's savings account. After investigating, the Church learned that Marbella filed a statement with the California Secretary of State on December 23, 2008, adding herself as chief executive officer (CEO) of the Church. Marbella had never been a member of the board of trustees or an officer of the Church. The Church had never passed a resolution electing her as CEO. The Church's savings account statement received in the beginning of January 2009 showed several unknown withdrawals amounting to over $3,100.

As of January 2009, Marbella, along with her sister Lue, controlled the Church's savings account and refused to turn over control to the board of trustees. The Church had become indebted to members of the board of trustees, who volunteered to personally pay the Church's expenses because the Church did not have access to the savings account.

3

Marbella and Lue were using Church money collected in offerings and tithes for their own use. They had also changed all the locks on the Church property and prevented members from coming to Sunday services.

The complaint alleged causes of action against Marbella and Lue for imposition of constructive trust, unjust enrichment, conversion, accounting, and injunctive relief. It sought damages and an injunction enjoining Marbella and Lue from entering Church property and using or taking any money belonging to the Church. Injunctive relief was also sought to require them to produce all financial records for the Church from October 2008 to the present, remove themselves as authorized users of the Church bank accounts, and turn over all Church keys, equipment, fixtures, furnishings, appliances, books, and other Church assets in their possession. The Church was also seeking a temporary restraining order.

The complaint was verified by Kemp, a member of the board of trustees.

## 2. Trial

The bench trial in this matter commenced on January 11, 2011, and ended on January 13, 2011. Brooks, Richardson, Kemp, Williams, and Edwards, among others, testified in the Church's case. The Church adduced the following evidence at trial.

Around 1998, the Church had previously litigated who controlled and managed it. The Church's deacon board brought that action against two individuals. In January 1998, the court appointed an arbitrator to preside over a secret ballot election for Church members that would determine who controlled the Church. The Church deacon board prevailed in the secret ballot election. On October 1, 1998, the court entered judgment in that action declaring the deacon board to be "the legal owner and the leadership body" of the Church. The judgment also ordered the defendants to turn over possession of the Church to the deacon board, including its real property, bank accounts, money, and all other assets.

The Church's bylaws, revised in May 1999, state that the following officers will conduct the business of the Church: the pastor; in the absence of the pastor, the chair of the deacon board; in the absence of the chair, the assistant chair of the deacon board; in

4

the absence of the assistant chair, the trustee board; in the absence of the trustee board, the Church secretary; and in the absence of the secretary, the assistant Church secretary. The bylaws state that the trustees "shall protect the interest of the Church and take all necessary measures to manage the upkeep, security and welfare of members within the Church, and Church property." The bylaws provide that the Church shall annually elect its officers. A quorum of at least 12 Church members in good standing is required for voting.

The Church's deacon board right before Washington's death consisted of Washington, Brooks, and Richardson. Washington was the chair of the deacon board. Brooks was the assistant chair of the deacon board. Brooks and Richardson had been members of the deacon board since 1998 and 2003, respectively, to the present. They were ordained deacons. Washington had also been a member of the deacon board since at least 1998 to his death in 2008. After Washington's death, the only members of the deacon board were Brooks and Richardson.

The Church's board of trustees since 1998 has consisted of Washington, Brooks, Kemp, Edwards, and Williams. In 2008, the trustee board consisted of the same individuals. The two boards, the deacon board and the board of trustees, functioned together to run the Church.

Marbella and Lue are Washington's daughters. Lue served as Church secretary from approximately 1998 to 2005. The board of trustees removed Lue as secretary in 2005 because she was involved in an unauthorized attempt to change the Church's name. The vote of the board of trustees to remove her was unanimous. This included the vote of her father. Lue was never reinstated as secretary by either her father, Church members, or the Church boards. Williams took over as Church secretary after her removal.

On December 23, 2008, 19 days after Washington's death, Marbella filed a "statement of information" with the California Secretary of State that named herself as CEO and chief financial officer (CFO) of the Church and Lue as secretary of the Church. Marbella did not consult either the deacon board or the trustee board before filing this statement of information naming herself as CEO and CFO. Neither of these boards

5

named her CEO and CFO, and Washington did not assign her to these positions. There was never a vote on the issue of Marbella taking over the Church.

Since Marbella filed the paperwork naming herself as CEO/CFO, she had taken over the running of the Church from the board of trustees and deacon board. She did not consult the boards on the business of the Church. She changed the locks on the Church, installed a security guard at the Church who required everyone to sign in when entering, and took over the Church finances. She also installed a new pastor and changed the structure of the services.

The court filed its statement of decision on March 30, 2011. In its statement of decision, the court observed that the judgment in the 1998 action had determined that the deacon board was the legal owner of the Church, and it transferred control of the Church and all its assets to the board. The court noted that, although Marbella claimed to be CEO of the Church, there was no evidence that the Church had elected her to that position or that the deacon board had named her to that position. The court found that the deacon board was the governing body of the Church at the time of Washington's death on December 4, 2008. Further, it found that the deacon board consisted of only Brooks and Richardson after Washington's death, and the deacon board was the only body that could legally take charge of the management and control of the Church. The court also found that the board of trustees consisted of Kemp, Brooks, Edwards, Williams, and Marbella, based on evidence Marbella presented at trial.

The court directed Marbella and Lue to turn over all Church assets, including books, records, and checking accounts, to the Church deacon board. It moreover ordered that Marbella and Lue not interfere with the daily management of the Church, take no action to lock out or restrict entry of the board, surrender all keys and security devices to the Church, refrain from occupying the pulpit of the Church without permission from the governing body, and refrain from hiring any security personnel.

The court found that neither Marbella nor Lue unlawfully spent Church funds for their own use. It therefore found for them on the Church's conversion, unjust enrichment, and accounting claims.

6

The court entered judgment on April 27, 2011, and Marbella and Lue timely appealed.

## DISCUSSION

Appellants' three contentions of error all lack merit. First, appellants contend that the trial court erred when it turned over real property to people who have no ownership interest in it, in violation of appellants' due process rights. Appellants assert they are the legal title holders of the Church real property. They cite no evidence, however, showing this was the case. On the contrary, the evidence showed that the former owner of the real property conveyed it to the "Friendship Baptist Church of Long Beach, a California Corporation" by grant deed in 1974.[2] The trial court's findings and judgment did not convey the Church real property to new owners. The court's actions did not change the reality that the Church *qua* corporate entity is the legal title holder of the real property. The court merely determined who were the proper parties to assume management of the Church.

To the extent we can construe appellants' argument as a sufficiency of the evidence challenge to the court's finding that the governing body was the deacon board consisting of Brooks and Richardson, this argument also fails. They fail to carry their burden on appeal. "Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573; see also *Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.) To prevail on a sufficiency of the evidence argument, appellants had to affirmatively show that there was no substantial evidence in the record to support the court's findings. (*California Native Plant Society v. City of Rancho Cordova* (2009) 172 Cal.App.4th 603, 626.) This required that they set forth all the evidence in the record

---

[2]     The Church filed an amendment to its articles of incorporation in 1998 changing the name of the corporation from Friendship Baptist Church to the current name, Friendship Missionary Baptist Church.

material to the challenged findings, then persuade us that all that evidence could not reasonably support the findings. (*Ibid.*) This they have not done.

Even had they set forth all the relevant evidence, we would still reject this argument. Substantial evidence existed to support the court's finding that the deacon board consisting of Brooks and Richardson was the governing body of the Church, as well as the finding that Marbella had not been elected as CEO by the proper authority. The 1998 judgment in the previous action determined that the deacon board was owner and leadership body of the Church. The bylaws placed the deacon board at the top of the hierarchy of Church management, second only to the pastor. Several witnesses for the Church testified that the deacon board consisted only of Brooks and Richardson after Washington's death. The bylaws stated that Church officers were to be elected by Church members. There was no evidence that Marbella was elected to the CEO position. Even if Marbella could have been simply appointed by the deacons, several witnesses testified that the deacon board never approved Marbella as the CEO. Also, there was no evidence that the only person above the deacon board, the pastor, named Marbella CEO. This evidence was sufficient to justify the court's findings. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 270 [factual findings subject to substantial evidence review, wherein appellate court views the evidence in the light most favorable to the judgment and the findings].)

Appellants' second contention of error is that the court's judgment violated their constitutional right to religious freedom, and they cite *Serbian Orthodox Diocese v. Milivojevich* (1976) 426 U.S. 696. *Serbian Orthodox* is not applicable here. In that case, the United States Supreme Court held that when the resolution of disputes "cannot be made without extensive inquiry by civil courts into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them." (*Id.* at p. 709.) Along the same lines, the Supreme Court observed that "the First and Fourteenth Amendments permit hierarchical religious organizations to

8

establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters.  When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them." (*Id.* at pp. 724-725.)  The Supreme Court reversed a decision of the Illinois Supreme Court because it impermissibly rejected the determinations of the "Mother Church" at issue regarding certain religious disputes.  (*Id.* at pp. 712, 724-725.)

In this case, the trial court did not impermissibly substitute its own judgment for the decision of an ecclesiastical tribunal.  Indeed, there was no tribunal within the Church that decided Marbella should control the Church.  Instead, the trial court's rulings were based on a neutral application of the Church's own determinations about leadership and rules for governance.  This was an appropriate way to settle the dispute.  (*Korean United Presbyterian Church v. Presbytery of the Pacific* (1991) 230 Cal.App.3d 480, 498 ["[A] state court may resolve disputes over church property through use of neutral principles of law, focusing on sources such as deeds to church property, articles of incorporation, bylaws, state statutory law and the constitution and rules of the general church; but if the civil court is required to resolve a religious controversy, it must then defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body."], disapproved on other grounds by *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743.)  The bylaws provided for officers to be elected, and there was no evidence that Marbella had prevailed in an election for the CEO position.  The Church's members voted in 1998 to make the deacon board the leadership body of the Church.  The 1999 bylaws confirmed that by placing the deacon board at the top of the Church hierarchy.  And as we have already discussed, substantial evidence supported the court's determination that the deacon board consisted of Brooks and Richardson after Washington's death, meaning they were the leadership body, not Marbella.  There was no evidence that Marbella was ever part of the deacon board.  Accordingly, appellants' argument that the judgment

should be reversed because it "create[d] a Deacon Board where there was none" does not persuade.

Appellants' third and final contention of error is that Kemp had no standing to sign the verified complaint on behalf of the Church because, if it was true that the deacon board was the governing body, she was not a member of that board; she was a member of the board of trustees. We disagree with appellants. "Every action must be prosecuted in the name of the real party in interest . . . ." (Code Civ. Proc., § 367.) "Generally, 'the person possessing the right sued upon by reason of the substantive law is the real party in interest.'" (*Del Mar Beach Club Owners Assn. v. Imperial Contracting Co.* (1981) 123 Cal.App.3d 898, 906.) Further, "[t]o have standing, a party must be beneficially interested in the controversy, and have 'some special interest to be served or some particular right to be preserved or protected.' [Citation.] This interest must be concrete and actual, and must not be conjectural or hypothetical." (*Iglesia Evangelica Latina, Inc. v. Southern Pacific Latin American Dist. of the Assemblies of God* (2009) 173 Cal.App.4th 420, 445 (*Iglesia Evangelica*).)

In *Iglesia Evangelica*, the court determined that a member of the church's board of directors had standing to pursue the action on behalf of the church (the named plaintiff) because the board itself was "an aggrieved party beneficially interested in ensuring [the church's] corporate form is respected, its property safeguarded, and that the parties' governing documents are complied with." (*Iglesia Evangelica, supra*, 173 Cal.App.4th at p. 446.) Likewise, Kemp, as a member of the Church's board of trustees, had standing to pursue this action on behalf of the Church, a nonprofit religious corporation. The Church bylaws specifically charged the trustees with protecting the interests of the Church and mandated that they "take all necessary measures to manage the upkeep, security and welfare of members within the Church, and *Church property*." (Italics added.) As such, the trustees were an aggrieved party beneficially interested in ensuring that the Church's

10

corporate structure was respected, its property safeguarded, and its governing rules complied with.  Appellants do not cite a single authority demonstrating otherwise.[3]

**DISPOSITION**

The judgment is affirmed.  Respondent to recover costs on appeal.


                                                    FLIER, J.

WE CONCUR:


        RUBIN, Acting P. J.


        GRIMES, J.

---

[3] The Church filed a motion to strike several pages from appellants' reply brief that constituted exhibits to the brief.  California Rules of Court, rule 8.204, subdivision (d), provides that a party may attach to its briefs copies of exhibits or other materials in the appellate record.  The pages the Church seeks to strike were part of the appellate record. We therefore deny the motion.